IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **T-MOBILE SOUTH, LLC,** | ] |
| **Plaintiff,** | ] |
| v. | ] |
| | ]   **CV-06-RRA-1604-S** |
| **TUSCALOOSA ZONING BOARD** | ] |
| **OF ADJUSTMENT.** | ] |
| **Defendant.** | ] |

### MEMORANDUM OPINION

This case is before the court on Plaintiff T-Mobile South LLC's Petition for Writ of Mandamus and Declaratory Relief (Doc. 1).[1]  On March 27, 2007, after briefing and submission of evidence by both sides, this court held a hearing on the merits of T-Mobile's petition. After consideration of the briefing, evidence, and arguments presented at the hearing, the court hereby DENIES Plaintiff's petition, for the reasons outlined below.

**I.  FACTUAL BACKGROUND**

On June 13, 2006, Plaintiff T-Mobile applied for two special exceptions to Tuscaloosa zoning laws: specifically, a height variance and a setback variance to construct a 150-foot monopole tower.  Defendant Tuscaloosa Zoning Board of Adjustment held a public hearing on the application on June 27, 2006.  At the hearing, T-Mobile briefly presented its case to the

---

[1] In an order dated February 1, 2007 (Doc. 21), this court set a hearing *on the merits* of Plaintiff's Petition for a Writ of Mandamus and Declaratory Judgment.  In that order, the court instructed Plaintiff to submit briefing and evidence in support of its petition.  Plaintiff, however, submitted a motion for summary judgment (Doc. 22), accompanied by briefing and evidence.  Because of the nature of this non-jury case, the court adheres to its order and addresses the merits of Plaintiff's petition.

Board, and two community members raised objections based on the aesthetics of the tower, and concerns about health risks of microwave emissions from cell phone towers. The Board asked a smattering of questions throughout T-Mobile's presentation, none of which were particularly pointed or indicated what the Board's concerns might be. At the close of the hearing, the Board verbally denied the application without providing any reason for the denial. Then on July 17, 2006, the attorney for the city of Tuscaloosa, Thomas Bobitt, sent T-Mobile a letter outlining the reasons for the denial.

On August 15, 2006, T-Mobile instituted the present lawsuit, seeking a declaratory judgment that the Board violated the Telecommunications Act ("TCA"), 47 U.S.C. § 332, and requesting the court to issue a writ of mandamus ordering the Board to approve T-Mobile's application for a building permit. T-Mobile's complaint argues that the Board's action was arbitrary and capricious, that it failed to comply with certain procedural requirements of the TCA, that it violated the Tuscaloosa ordinance requiring notice within seven days, and that the denial also violated substantive provisions of the TCA.

## II. DISCUSSION

The TCA contains a subsection entitled "Preservation of local zoning authority," which states that "*[e]xcept as provided in this paragraph*, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A) (emphasis added). The subsection then provides several limitations on state and local authority to make decisions regarding wireless service facilities. At issue in this case[2] is

---

[2] As Defendant has noted, Plaintiff makes a couple of passing references to a claim that it has been unreasonably discriminated against, in violation of Part (B)(i)(I) of the subsection. Plaintiff, however, has only argued that the Board's decision violated the TCA requirement set forth in Part(B)(iii).

Part (B)(iii):

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be <u>in writing</u> and <u>supported by substantial evidence contained in a written record</u>.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

Plaintiff argues (1) that the Letter does not constitute a written denial because it was authored by a city attorney who is not a member of the Board; and (2) that the written denial is not supported by substantial evidence contained in a written record.

### A.     Letter Authored by Attorney

Plaintiff contends that the Letter does not constitute a written denial because it was written by the city attorney, Thomas Bobitt, rather than a member of the Board itself. Plaintiff cites *Metronet, Inc. v. Bd. of Supervisors of James City*, 984 F. Supp. 966, 973 (E.D. Va. 1998). That case held that an employee of the zoning board, who did not actually sit on the board, could not render a written decision on behalf of the Board members. The court there emphasized that the letter was prepared after the hearing, by someone who had not actually voted on the decision. Perhaps more importantly, however, the written letter in that case was not created until six days after plaintiffs filed their lawsuit, strongly suggesting that the letter was pretextual.

Defendant argues that the Board is an agency of the City of Tuscaloosa, and that Mr. Bobitt, as city attorney, is statutorily authorized to represent the city and its boards and agencies. *See* Ala. Code § 11-44B-11(f). Further, Alabama law, as well as general principles of agency, provides that an attorney has the authority to bind and speak for his or her client. Ala. Code. § 34-3-21.

Plaintiff's argument that the Letter does not constitute a written denial merely because it

was drafted by the city attorney is unpersuasive.  The court, therefore, will examine the contents of the Letter to ascertain whether it comports with the requirements of the TCA.

    B.    **Substantial Evidence Contained in a Written Record**

        *1.*    *Alabama Law*

As the Eleventh Circuit has stated, "The TCA's requirement that local decisions be supported by substantial evidence does not affect or encroach upon the substantive standards to be applied under established principles of state and local law." *Preferred Sites v. Troup Cty.*, 296 F.3d 1210, 1219 (11th Cir. 2002) (internal quotation marks omitted) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 1166 F.3d 490, 494 (2d Cir. 1999)).  In other words, the local zoning boards are free to apply the applicable substantive state and local law, provided that their decision under that law is based upon substantial evidence.  This court, therefore, will look to the applicable Alabama law and Tuscaloosa zoning ordinances to determine whether substantial evidence exists to deny T-Mobile's application under those laws.

Alabama law confers authority on a local zoning board of adjustment to hear and decide whether to grant special exceptions and variances.  Ala. Code 1975 § 11-52-80(d)(2)-(3).  The provisions give the board of adjustment power:

> (2) [t]o hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; and
>
> (3) [t]o authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

Ala. Code 1975 § 11-52-80(d)(2)-(3) (emphasis added).

T-Mobile asked the Board both for a special exception – because the property where it wants to put the tower is zoned as residential – and for a variance – because the proposed wireless communications tower would exceed the height and setback requirements set forth in the zoning provisions of the Code of Tuscaloosa.

For a special exception, the Alabama Code does not provide any standard that must be used by a local board in determining whether to grant an exception. Rather, it defers to the local ordinance. Section 24-91 of the Code of Tuscaloosa, "Special exceptions," sets forth "primary" conditions to granting exceptions that may only be waived "in cases where imposition would impose an unnecessary hardship on the applicant or would not promote the public health, safety, and welfare of surrounding area." Section 24-91 also sets forth "discretionary" conditions, which "are indicative of the kind of development desired, but are not binding conditions." The primary condition for granting a special exception for a wireless telecommunication tower is that it must meet all the requirements for such a tower, set forth in another provision of the Code, Section 24-110. The discretionary condition is that "the board should be satisfied that the applicant is not able to meet the requirements of section 24-111," a provision of the Code requiring wireless providers to first attempt to co-locate its antenna on an existing wireless tower.

Because T-Mobile's proposed tower did not meet the setback and height standards for wireless towers, contained in Section 24-111, *without a variance* from that ordinance, the Board could not grant a special exception to the residential zone. Accordingly, the focus of the Board inquiry was whether to grant the variance. As noted above, Alabama law grants the Board the power to authorize such a variance when "owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done." Ala. Code 1975 § 11-52-80(d)(3).

The Alabama Supreme Court, in turn, has defined "unnecessary hardship" as follows:

> all relevant factors, when taken together, must indicate that the *plight of the premises* in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone. . . . A mere hardship or inconvenience is not enough to justify a variance. . . . Moreover, the reasons for granting a variance must be "substantial, serious, and compelling." . . .

*Ex parte Chapman*, 485 So. 2d 1161, 1162-63 (Ala. 1986) (emphasis added). The burden of showing unnecessary hardship is thus quite high, and is placed upon the property owner seeking the variance.

The focus of this court, therefore, will be on whether the Board's written denial of T-Mobile's application is based upon substantial evidence in the written record that T-Mobile did not establish an unnecessary hardship in the absence of the variance.

### 2. *The Letter*

The Letter contains six numbered paragraphs articulating reasons for the Board's decision, concerning roughly three different areas of inquiry: (1) whether T-Mobile had an interest in the property; (2) aesthetic concerns of community members, including concerns about the removal of parking spaces from the church parking lot; and (3) the actual necessity for the tower.

First, the Letter notes that the Board did not have before it at the hearing an executed lease demonstrating that T-Mobile had a property interest in the church parking lot. The court acknowledges that a factual dispute exists as to whether T-Mobile presented to the Board sufficient proof of its interest in the property in question, which the Tuscaloosa County Baptist

Association owned and had provisionally agreed to lease to T-Mobile.[3]  The court will assume, however, for the purposes of this opinion, that T-Mobile did provide the Board with a copy of the lease agreement it had reached with the association.

Another category of objections expressed in the Letter pertains to aesthetic concerns raised by community members.  The Eleventh Circuit has held that "citizens' generalized concerns about aesthetics are insufficient to constitute substantial evidence upon which the Board could rely.  Aesthetic concerns may be a valid basis for denial of a permit if substantial evidence of the visual impact of the tower is before the board." *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1219 (11th Cir. 2002).  Here, the community member presented evidence and arguments that the community was trying to beautify the area in which the tower would sit, but did not present any specific evidence of the visual impact.  Accordingly, under Eleventh Circuit law, the Board should not have relied on the aesthetic concerns of the neighborhood members.

Even assuming that the Board improperly relied on the aesthetic concerns, however, T-Mobile still did not establish any unnecessary hardship as required under Alabama law to obtain a variance.  The Letter expressly addresses ways in which T-Mobile did not sufficiently establish the need for the tower.  Numbered paragraph 2 states that T-Mobile did not explain why other cellular service providers appeared (per testimony of community members) to have no coverage problems in the area.  The Letter also states in that paragraph that T-Mobile did not provide any specifics as to why it could not modify another tower – located just outside the "search ring" of possible sites to service the area in question – to provide the needed coverage.  Numbered

---

[3] At the hearing, Lou Katzerman, the attorney who represented T-Mobile at the hearing, testified that he took a copy of the memorandum of lease to the Board prior to the hearing.  The cover sheet indexing the contents of the binder Mr. Katzerman delivered to the Board, however, did not list the lease as an attachment.  Additionally, Plaintiff's Exhibit 1 submitted in this court, which contained the application and supporting documentation it gave to the Board, also did not contain the memorandum of lease.

paragraph 3 states that, although T-Mobile presented evidence that 1,700 calls were made to 911 in all of Tuscaloosa County during a two week period, which supported a need for the tower to ensure that emergency calls were not dropped, it did not establish how many 911 calls were affected in the relevant coverage area.  Nor, according to the Letter, did T-Mobile make clear that 911 calls could not be preserved by routing them through another carrier when T-Mobile did not have service.  The Letter also states that T-Mobile did not sufficiently justify the need for a 150 foot tower, as opposed to a 100 foot tower, which would be allowed under the city ordinance without a variance.  Another issue raised in the Letter – related to aesthetics, but also a practical concern – was uncertainty regarding how many parking spaces at the church would be eliminated upon the tower's construction.

The Board did not specifically highlight these issues, or ask targeted questions regarding them.  Although the Letter makes these objections in a much clearer and direct manner than the Board members did at the hearing, the factual representations in paragraphs 2 and 3 about what T-Mobile did and did not present at the hearing are essentially accurate.

Nonetheless, T-Mobile – as the party seeking the special exception and variances – bore the burden of establishing unnecessary hardship at the hearing.  Neither T-Mobile's materials submitted to the Board nor its argument at the hearing, established that the "plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone." *Ex parte Chapman*, 485 So. 2d 1161, 1162-63 (Ala. 1986).  In fact, T-Mobile presented no information as to why the property in question could not be put to a different conforming use.  The information presented to the Board addressed why *T-Mobile* – not the premises – would suffer an unnecessary hardship; and the Board apparently remained unconvinced of even T-

Mobile's hardship. The court, therefore, finds that the written record in this case provides substantial evidence that T-Mobile failed to meet its burden under Alabama law of showing unnecessary hardship.

Finally, an issue raised at the hearing, but not listed as a reason for denial in the Letter, was the possibility that wireless communications towers pose health risks to community members. As Plaintiff points out, the TCA expressly prohibits local boards from denying the construction of wireless towers on the basis of "environmental effects of radio frequency emissions . . . ." 47 U.S.C. § 332(c)(7)(B)(iv). The Letter, however, does not reiterate those concerns, and nothing in the record indicates that the Board impermissibly considered the health effects in making its decision. The inclusion of those statements at the hearing, therefore, does not require this court to overrule the Board, when it stated other valid reasons for denying the application.

## IV.   CONCLUSION

For the reasons outlined above, the court hereby DENIES Plaintiff T-Mobile's Petition for a Writ of Mandamus and Declaratory Judgment. A separate order will be entered contemporaneously with this memorandum opinion.

DATED this 30th day of April, 2007.

*[signature]*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE